## - Kelly *vs* Kelly.

APPEAL FROM THE JEFFERSON CIRCUIT.     *Case* 125.

*Wills, nuncupative.*

JUDGE GRAHAM delivered the opinion of the Court.     *September* 25.

IN October, 1848, William H. Kelly died. A pistol shot had fractured his jaw, and destroyed a portion of his tongue; in consequence of which, he was unable to speak. An effort is made in this controversy, to establish the fact that, on the night or morning preceding his dissolution, he made a nuncupative will. The County Court of Jefferson refused to establish, as his will, the instrument of writing which, immediately after his death, was drawn up as such, and attested by witnesses. From that decision an appeal was taken by the widow of said Kelly, to the Jefferson Circuit Court, and that Court having affirmed the order of the County Court, she has, by appeal, brought the case to this Court.

Whether, as contended by counsel, the right of disposing of property by will in writing, or by nuncupative will, is not a right *created* by *municipal* law, but a *natural* right, having its existence *independent* of municipal law, and merely controlled and modified by positive regulations, is a question more of curious enquiry, than of profitable discussion. Our statutes have directed how wills of either kind shall be made, so as to be valid in law, and have prescribed who shall be permitted to make them. Kelly was of mature age, and, at least, up to the time of the supposed making of a will, was of sound and disposing mind. The will, if made at all, was made in the time of his last sickness, at his habitation, and his estate greatly exceeds ten pounds in value, and the will was reduced to writing immediately after his death. But he could not speak, and, of course, did not call on any person present to take notice or bear testimony, that such was his will, or words of the like import.

KELLY
vs
KELLY.

It is not neces-
sary that a testa-
tor about to
make a nuncu-
pative will,
should formally
call upon those
present to take
notice, if it
clearly appear by
word or assent,
that such was the
testator's desire:
(Hare vs Bryant,
Print. Dec. 317.)

It was decided by this Court, in the case of *Hare vs Bryant,* (*Printed Decisions,* 317,) that in order to comply with the directions of the statute, it was not necessary that the testator should formally call on the bystanders to take notice that such was his will, but that if it clearly appeared by her words or assent, that such was her intention, it must be considered that she did that which was tantamount to calling on witnesses. In that case, however, the testator could and did speak, and it was from her declarations, that her intention and wish was collected. In this case, Kelly could not speak.

"It was once held, that persons who are deaf, dumb and blind, cannot make a will, because they want those senses through which ideas are received into the mind." The avenues to the mind are closed up, and it is impossible to communicate to, or receive correct ideas from them, as to any disposition of property. "Those who are both deaf and dumb, if any be so by nature, cannot make *any kind* of testament or last will, unless it do appear, by sufficient arguments, that he understandeth what a testament meaneth, and that he hath a desire to make a testament; for if he have such understanding and desire, then he may, by signs and tokens, declare his testament," &c: (*Swinburne on Wills,* 164–5.) Here, Kelly was neither deaf or blind, but he was dumb, not from natural infirmity, but from a recent violence, by which he was deprived of the use of speech. Up to the time of receiving the injury, and, in fact, up to the time at which it is insisted that he made his will, he was in his sound mind.

It is proved, by several witnesses, that Mr. Elliott, after admonishing him of the uncertainty of his hold on life, said to him: "You have property, who do you wish to have it?" Being unable to speak, Kelly immediately turned his head and looked at his wife, who was standing near him. He was then asked if he wished his wife to have all his property? to which Kelly nodded his head in assent. Mr. Elliott then remarked to him: "William, you have brothers and sisters, do you not wish them to have any of your property? To this

Mr. Kelly shook his head." The witnesses say, that they had a fair view of Kelly, and are fully satisfied, that he comprehended the questions, and knew well the meaning of the gestures he made in response to them, and that he was, at the time, in his perfect mind, and so continued for some time afterwards. Kelly was not asked, whether he wished those present to take notice that such was his will, nor was there any evidence that he made any sign to that effect.

Other witnesses state that Kelly was not in condition to make a will. Others proposed to him questions about his will, and obtained no signs; and one, after Mrs. Kelly retired from the room, enquired if he wished his wife to have all his estate? to which question he shook his head, as if in dissent. Whilst in health, he had been heard on some occasions to say, that he would leave his property to his wife, to dispose of as she thought proper; that he had twice aided his brothers and sisters, and they had squandered his means, and were not thankful to him, and he should help them no more, and they should have none of his property. Others testify, that he entertained kind feelings to them, and expressed the intention of giving them still further aid.

Does this proof come up to the requisitions of the statute? We think it does not. Here was no calling on witnesses by words or signs. If Kelly wished to leave the greater part of his estate to his wife, and a small part to his relations, he did not and could not discriminate. He had been able to write on a slate with a pencil, until a short time before he was asked in relation to making a will, and had, in this way, communicated his wishes upon other subjects, and yet he had given no intimation of a wish to make a will.

To justify a Court in setting up a nuncupative will, care should be taken to be satisfied, that the sick man wished to make a will, and that he actually did declare, by words or signs, not to be misunderstood, that such were his intentions. The evidence in this case falls short of this. We cannot say that we are satisfied that he did so intend, or that he was in a condition to

*To make a valid nuncupative will there must be some act done not to be misunderstood, showing a design at the time, to make a will, by words or signs, and what that will is.*

give satisfactory responses. The will was at the sug-
gestion and leading of others, his weeping wife by his
side, and her father supporting him, and on that ac-
count, may be justly regarded with strong doubt. Up-
on the whole case, we are satisfied that the evidence is
not of that character which the law requires to set up a
nuncupative will, and that the Court below did right in
rejecting the instrument as the will of Kelly.

Wherefore, the judgment is affirmed.

*Rousseau, Guthrie, Duncan and Ripley* for appel-
lant ; *Thruston & Pope and Pirtle & Speed* for appel-
lee.